HOMER GRIFFITH et al., Respondents, v. THE MUTUAL PROTECTIVE LEAGUE et al., Appellants.

St. Louis Court of Appeals. Argued and submitted June 4, 1918
Opinion Filed July 12, 1918.

1. **INSURANCE:** Fraternal Beneficiary Associations: Licensed to do Business in Missouri: Evidence. Evidence *held* to sustain the finding of fact by the trial court that defendant fraternal beneficiary association, at all times prior to the issuance of the benefit certificate sued on in this case, and ever since, has been duly authorized and empowered to do business in this State in accordance with the provisions of article 9, chapter 61, of the Revised Statutes of 1909, as a fraternal beneficiary association, and had complied with the statutes in reference to making annual reports, and has filed with the Superintendent of Insurance its authorization for him to accept service for it in this State.

2. **APPELLATE PRACTICE: Finding of Fact by Trial Court: Rule of Review.** When the trial court makes its finding of fact under the statute, that finding is binding on the appellate court, if supported by any substantial evidence.

3. ————: **Trial Practice: Finding of Fact by Trial Court: Failure to Save Exceptions: Point Not Reviewable.** Furthermore, there being no objection or exception on the part of respondents to the finding of the trial court, that defendant association was duly authorized and empowered to do business in this State, etc., they cannot avail themselves of this point on appeal.

4. **WORDS AND PHRASES: Public Policy Defined.** The public policy of a State is to be found as expressed in its Constitution and Laws, and in the decisions of its highest court, and not from general consideration of the supposed public interests and policy of the state beyond what such sources of information make known to the court.

5. **INSURANCE: Fraternal Benefit Insurance: Conditions in Policy: Validity.** A clause in a fraternal benefit certificate, which provided that if the member holding the certificate shall die by the hands of the beneficiary or beneficiaries named therein, etc., this certificate shall be null and void and of no effect, is not void for contravention of public policy, but is a valid clause.

6. ————: ————: **Murder of Insured by Beneficiary: Right to Recover.** Where a benefit certificate on the life of the deceased named her husband and her adopted son as beneficiaries, and the husband murdered her by setting fire to her clothing, and the son, in attempting to save her, was burned, and died before she did, the husband having forfeited the benefit under the clause of the policy, brothers of deceased could not recover the benefit; the clause against recovery, if the killing was by the beneficiary or beneficiaries, not being too indefinite.

7. ————: ————: ————: ————. In such case insured's brothers, not beneficiaries, could not recover on the theory that it would be to the interest of the insurer to procure the murder of the insured by one of the beneficiaries, and so prevent recovery by either of them.

Appeal from the Circuit Court of Pike County.— *Hon. Edgar B. Woolfolk,* Judge.

REVERSED.

*Edward Doocy, John S. Fitzgerrell,* and *Vail Pogue & Allen* for appellant.

(1) Section 5 of the benefit certificate sued on is valid and prevents a recovery in this case. Cases wherein recovery is allowed where death of the insured is caused by the beneficiary are decided upon construction of the contracts. Sharpless v. Grand Lodge A. O. U. W., 159 N. W. 1086; Schmidt v. Northern Life Assn., 112 Iowa, 41 51 L. R. A. 141; Knights of Honor v. Menkhausen, 209 Ill. 277, 65 L. R. A. 508. (2) The public policy of Missouri respecting forfeitures does apply to fraternal benefit societies. Tice v. Supreme Lodge K. P., 204 Mo. 349, 102 S. W. 1013, 100 S. W. 519; Westermann v. Supreme Lodge K. P., 196 Mo. 670, 94 S. W. 470. (3) It is not unlawful nor against public policy for a contract of life insurance to stipulate that upon certain conditions the policy should become void. Northwestern Life Insurance Company v. Hazelett, 105 Ind. 212, 55 Am. Rep. 192; Grand Circle Women of Woodcraft v. Rausch, infra; Dumas v. Northwestern Natl. Ins. Co., 40 L. R. A. 358; Douglas v. Knickerbocker Life Ins. Co., 83 N. Y. 492. (4) It makes no difference that the clause here invoked is in the form of a forfeiture. The result is the same as if it were in the form of an exception to the general risk of death insured against. In either form recovery cannot be had. Clair v. Supreme Council of Royal Arcanum, 155 S. W. 892; Pauley v. M. W. of A., 87 S. W. 990; Hexon v. Knights of Maccabees, 117 N. W. 19; Kempe v. Woodmen of World, 44 S. W. 688; Havle v. Eminent Household of C. W., 176 S. W. 313; Marcoux v. Society of Beneficence, 39 Atl. 1027; Bradley v. Mutual Benefit Life Ins. Co., 45 N. Y. 422; Hasper v. Phoenix Ins. Co., 19 Mo. 506, 18 Mo. 109; Supreme Council of Royal Templars v. Curd, 111 Ill. 284; Dickerson v. Northwestern Mutual Life Ins. Co., 200 Ill. 270; Aetna Life Ins. Co. v. Davey, 123 U. S. 739; Mutual Life Ins. Co. v. Terry, 15 Wall 580. (5) It has been expressly held that the clause here in question is valid and

precludes recovery. Travelers Insurance Co. v. Mc-Conkey, 127 U. S. 661; Grand Circle Women of Wood-craft v. Rausch, 134 Pac. 141; Greer v. Supreme Tribe of Ben Hur, 190 S. W. 72.

*J. O. Barrow* and *Hostetter & Haley* for respond-ent.

(1) There is no evidence that at the time its policy was issued defendant was authorized to do business in this State as a fraternal beneficiary society, and although the rule is that the finding by the trier of fact, in an action at law is binding on an appellate court, yet if there is no evidence to support such finding the rule does not prevail. Brewing Co. v. St. Louis, 209 Mo. 601; Vincent v. Means, 207 Mo. 709. Defendant is a corporation organized under the laws of the State of Illinois—a foreign corporation—and must prove that at the time its policy in controversy was issued, it was authorized to do business in this State as a fraternal beneficiary society, in order to escape being governed by the provisions relating to regular or old line insurance. Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496, 501, and cases there cited; Conner v. Association, 171 Mo. App. 364 (and cases there cited); Brassfield v. Woodman, 88 Mo. App. 208; Brassfield v. Knights of Maccabees, 92 Mo. App. 102; Huff v. Woodmen, 85 Mo. App. 96; McDermott v. Woodmen, 97 Mo. App. 636; Keeton v. National Union, 178 Mo. App. 301; Lowenstein v. Old Colony Life Ins. Co., 166 S. W. 889. (2) The character of a company and its liability are determined, not by its name, nor by what it pretends to be, but by the policy in question. Toomey v. Knights of Pythias, 147 Mo. 129; Jacobs v. Life Ass'n, 146 Mo. 523; Folkens v. Ins. Co., 98 Mo. App. 480; Aloe v. Fidelity Mut. Life Ass'n, 164 Mo. 675 Trenton v. Humel, 134 Mo. App. 595; State ex rel. v. Vandiver, 213 Mo. 187, 207. "It is not the nature of the society but the terms of the contract in suit that determines the matter. See Wilson v. Gen. Assembly of Am.

Benev. Ass'n, 125 Mo. App. 597, 103 S. W. 109, and cases there cited. McPike v. Mystic Circle, 187 Mo. App. 686. (3) Courts will construe policies of insurance most strongly against the insurer; this rule is rigidly applied as to the amount of indemnity to be paid upon the happening of the contingencies insured against, and all doubtful languages and ambiguous provisions relating thereto will be resolved against the Company and in favor of the insured. Stix v. Travelers Indemnity Co., 175 Mo. App. 171; Birtlenham v. Sovereign Camp Woodmen of the World, 167 S. W. 590; Matthews v. Modern Woodmen, 236 Mo. 326; Renn v. Supreme Lodge K. of P., 83 Mo. App. 442; Connecticut Fire Ins. Co. v. Jeary, 51 L. R. A. 698; Mitchel v. Accident Co., 179 Mo. App. 1. LaForce v. Williams Ins. Co., 43 Mo. App 518, 530; Hoffman v. Accident Indemnity Co., 56 Mo. App. 301; Renshaw v. Mo. State Mut. F. & M. Ins. Co., 103 Mo. 595; Realty Co. v. Insurance Co., 179 Mo. App. 138 and cases there cited. Where is a conflict between a policy and the by-laws as to the amount of indemnity to be paid, the policy controls. Courtney v. Fidelity Mut. Aid Ass'n, 120 Mo. App. 115; Goodson v. Nat. Masonic Accident Ass'n, 91 Mo. App. 339, 348; and this rule applies to a foreign as well as a domestic corporation. Goodson v. Nat. Masonic Ass'n, supra; McFarlane v. Ins. Co., 124 Mo. 221. The contract will be construed so as to effectuate the indemnity; and this is true although the insurer may have intended otherwise. LaForce v. Williams Ins. Co., 43 Mo. App. 518; Hoffman v. Accident Ins. Co., 56 Mo. App. 501; Hale v. Insurance Co., 46 Mo. App. 508. (4) In the interpretation of contracts of insurance the maxium, *noscitur a sociis,* obtains. When a clause stands with others, its sense may be gathered from those which immediately precede and follow it. (5) An insurance contract should not be frittered away by vague and ambiguous clauses, nor emasculated by fine-print hidden forfeitures which the insurer never reads, or if read is misleading. Courts

do not, and should not, look with favor on this palpable scheme to deceive and trap the unwary. It would require an excess of legal acumen to discover the "joker" which appellant's counsel now contends forfeits the insurance. Stix v. Travelers Indemnity Co., 175 Mo. App. 171; Matthews v. Modern Woodman, 236 Mo. 343; Boon v. Aetna Ins. Co., 40 Conn. 586.

## STATEMENT.

Under date of March 12, 1908, the defendant company issued its benefit certificate to Mrs. Bertie Nicholson, a member of the order, by which certificate it promised to pay, at the time of the death of Mrs. Nicholson, while a member of the corporation or society, the sum of $500 to John W. Nicholson, her husband, and $500 to Howard G. Nicholson, her adopted son, these designated as beneficiaries, upon satisfactory proof of the death of Mrs. Nicholson, the certificate representing a total of $1000.

The benefit certificate is attached as an exhibit to the petition and was introduced in evidence and, designating John W. Nicholson, her husband, and Howard G. Nicholson, her adopted son, as beneficiaries, as above, it contains, among other provisions, the following, which are here material:

"That in the event of the death of any beneficiary prior to the death of said member, and upon his failure to have designated another beneficiary, then the amount to be paid under this certificate shall be due and payable to the other surviving beneficiaries, if there be any, and if none survive him, then to the legal heirs of said member."

It is further provided that the certificate is issued and accepted subject to the agreements, privileges and conditions named, among which is this, number 5:

"5. If a member holding this certificate shall be convicted of a felony, or shall be expelled from the Order, or become so far intemperate, or use opiates, cocaine, chloral of other narcotics or poison to such

an extent as to impair his health or to produce delirium tremens, or should die in consequence of a duel or while engaged in war, or by suicide, whether sane or insane, intentional or unintentional, except it be committed while the member is under treatment for insanity, or has been judicially declared to be insane *or by the hands of beneficiary or beneficiaries named herein, except by accident,* or by the hand of justice, or from disease resulting from his own vicious, intemperate or immoral habits, act or acts, or in consequence of the violation or attempted violation of the laws of the State or the United States or any other province of nation, or if any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued shall be found in any respects untrue, this certificate shall be null and void and of no effect; provided that in all such cases of death the amount of money contributed to the benefit fund by such member shall be returned and shall be paid to the beneficiary out of such fund in lieu of the benefit.''

The words which we have italicized above are those which are here involved.

The final clause is, ''This certificate is issued and accepted subject to all the conditions on the back hereof, and subject to all the laws, rules and regulations of the Mutual Protective League now in force, or that may hereafter be enacted, and shall be null and void if said member does not comply with all of said conditions and with the laws of the Council to which the said member belongs.''

There is another provision allowing the member to change the beneficiary by written instrument.

In the application for the benefit certificate, which was put in evidence by the defendant, clause 5, as above set out, is embodied, except that where in the certificate itself the words are, ''or by the hands of beneficiary or beneficiaries named herein, except by accident,'' the words in the application are, ''or by

the hands of beneficiaries named herein, except by accident.''

By the constitution of the Order it is provided:

''The certificates hereafter to be issued shall be in such form as is or may hereafter be determined by the board of directors.''

This appears to have been in force at the time of the issuance of this benefit certificate, the certificate bearing date March 12, 1908.

The petition upon which the case was tried avers that the plaintiffs are the surviving brothers of Bertie Nicholson; that she died on June 21, 1913, and that they constitute and are her only heirs at law; that at the time of her death Bertie Nicholson was a member of the defendant corporation, which, it is averred, was organized as such under the laws of the State of Illinois, and whose chief business, it is averred, is the insuring of the lives of its members for a pecuniary profit and consideration, for the benefit of its members and their beneficiaries. It is further averred that John W. Nicholson, a co-defendant, is the surviving husband of Bertie Nicholson and made a party defendant because he refused to join as plaintiff, and is a necessary party to a complete determination of the issues involved. It is further averred that by the benefit certificate issued March 12, 1908, and filed as before stated, defendant promised to pay to John W. Nicholson and Howard G. Nicholson, as beneficiaries, at the time of the death of Bertie Nicholson, while a member of the society, the sum of $500 each, or the total sum of $1000, upon satisfactory proof being made to the corporation of the death of Bertie Nicholson, and that it was further provided in the certificate, ''that the said defendant corporation obliged and bound itself in the event of the death of said beneficiaries to pay said sum of $1000 to plaintiffs as legal heirs of said Bertie Nicholson.''

It is then averred that on June 20, 1913, John W. Nicholson, then being the husband of Bertie Nicholson, feloniously murdered her by pouring gasoline and

kerosene over her body and setting fire to her in that condition, and that after he had set fire to her the other beneficiary named, to-wit, Howard G. Nicholson, the adopted son, in attempting to rescue his mother, was himself burned to such an extent that he died a few minutes before the death of his mother. It is further set out in the petition that the motive of John W. Nicholson in murdering his wife was to collect the insurance money involved in this suit; that on June 27, 1913, an information was filed in the circuit court of Audrain County, charging John W. Nicholson with the murder of his wife; that he voluntarily entered a place of guilty to the charge, a judgment of guilty of murder in the first degree was rendered against him by the circuit court, and he was sentenced to imprisonment in the State Penitentiary for the period of his natural life, from June 30, 1913, and that ever since the entry of the sentence and judgment, he has been incarcerated in the State Penitentiary under that life sentence.

Averring that Bertie Nicholson was a member in good standing in the defendant organization at the time of her death, it is averred that the plaintiffs, as substitute beneficiaries, furnished the required proof of her death.

It is further averred in the petition that John W. Nicholson is civilly dead and that by his conduct and by his crime against his wife, and by his conviction of her murder, and by the judgment of life imprisonment, he forfeited all his rights as the beneficiary named, and on account of his being civilly dead, as aforesaid, plaintiffs were entitled to collect from the defendant, as beneficiaries, the sum of $1000, which sum, it is averred, the defendant, by its benefit certificate promised and obligated itself to pay plaintiffs as the legal heirs of Bertie Nicholson. Averring demand and refusal by the defendant to pay this amount, the petition prays the court to adjudicate that John W. Nicholson is entitled to no part of the $1000, and that by reason of the premises had forfeited all his right un-

der it, either as original joint beneficiary, or as a survivor of Howard G. Nicholson, and to adjudicate and hold that the plaintiffs are entitled to all the right, title and interest set forth in the benefit certificate as belonging to the beneficiary, and they pray for judgment against the defendant in the sum of $1000, with interest at six per cent.

The administrator, appointed on the conviction and sentence of John W. Nicholson, answered, asking the court to determine and to adjudicate as to the proper party to receive the $1000, and that if the court found it due and payable to him as administrator, he prays for judgment to that effect.

The defendant corporation answered, after a general denial of all the allegations contained in the petition, except as thereafter expressly admitted, qualified or explained, as a further defense it sets up that it is a fraternal beneficiary society organized and incorporated under the laws of the State of Illinois, relating to such societies, set out the Act of the General Assembly of Illinois referred to in full, and avers a compliance with the terms of the law; that since its organization and the issue of the benefit certificate it has fully complied with the Act of the State of Illinois, and avers that it now is and was at all the times herein mentioned, and set out in plaintiff's amended petition, a fraternal beneficiary society, as defined by the statutes of the State of Missouri, relating to such societies; that it was formed and carried on for the sole benefit of its members and their beneficiaries and not for profit; that it has a lodge system, with ritualistic form of work and representative form of government, and makes provisions for the payment of benefits in case of death if its members; that the fund from which the payment of benefits is made, and the fund from which the expenses of the defendant society are defrayed, are derived from assessments for dues collected from the members; that the payment of death benefits is only made to the family, heirs, blood relatives, or to persons dependent on the member;

"that prior to and at the time of the issuance of the certificate herein sued on, it had applied for permission to transact business as a fraternal beneficiary society under the statutes of the State of Missouri, and that it has complied in all respects with the provisions and regulations contained in said Missouri Statutes relative to fraternal beneficiary societies organized in other States applying for permission to transact business in the State of Missouri, and that it now is and was at all times mentioned in plaintiffs' amended petition duly authorized by the insurance department of the State of Missouri to transact its said business in the State of Missouri, as a fraternal beneficiary society under the provisions of" (what is now article 9, chapter 61, Revised Statutes 1909) "and that at all the times mentioned in the plaintiffs' amended petition and in this answer defendant was doing business as a fraternal beneficiary society under and in compliance with the laws of the State of Missouri pertaining to fraternal beneficiary societies, and that the certificate herein sued on was issued and delivered to the said Bertie Nicholson by the defendant in its regular course of business in the State of Missouri and in strict compliance with the laws of the State of Missouri relating to fraternal beneficiary societies and associations; that at the time of its application for permission to transact business in the State of Missouri it duly designated a superintendent of insurance of the State of Missouri, as its agent and attorney in fact to accept service of process under the statutes of this state, and has duly filed all reports required in and by said statute aforesaid, and that the service had on this defendant was had by service on the superintendent of insurance as its agent and attorney in fact, as provided in said act."

Averring that the supposed cause of action is founded on the contract entered into by and between Bertie Nicholson and the defendant, and by the certificate filed by the plaintiffs as an exhibit, and that the by-laws of the society provide that the application for

200 M. A.—7.

membership shall be a part of the contract by and between the members of the defendant society and govern all rights thereunder, the answer sets out the conditions of the benefit certificate as heretofore stated, setting out clause 5 in full, as well as other clauses which we have before referred to. It admits the conviction of John W. Nicholson for the murder of his wife and his plea of guilty and the judgment of imprisonment for life and that he is now confined in the Penitentiary, and it is set out "that by the terms of the benefit certificate issued by defendant the Mutual Protective League, and by reason of the terms and conditions of the said benefit certificate, that said Bertie Nicholson agreed that in the event that her death was caused by the beneficiary, John W. Nicholson, that there could and should be no recovery on said policy, but that the same became null and void. This defendant further avers that by reason of all the aforesaid, that the said benefit certificate was rendered null and void and denies that any liability was due by reason thereof;" admits that during her lifetime Bertie Nicholson had contributed to the Mutual Protective League the sum of——and tenders the amount in court for the court to determine to whom it is due.

A reply, denying all the new matter set out in the answer, avers that Clause 5, pleaded by the defendant as in the contract sued upon, as relieving the defendant of liability in whole or in part in the event of the insured Bertie Nicholson having been murdered by John W. Nicholson, her husband, one of the beneficiaries named, is against public policy, unreasonable, void, inoperative and illegal, and plaintiffs pray the court to so hold and pray for the judgment and relief asked.

The cause was tried before the court.

Plaintiffs introduced the benefit certificate in suit, and the death of Mrs. Nicholson being admitted, and it being admitted that she had been murdered by her husband under the circumstances stated, and that her adopted son had died twenty or thirty minutes

prior to her death, testimony was also introduced to the effect that plaintiffs were the sole heirs, brothers, of Mrs. Nicholson, she leaving no other of kin, plaintiffs rested.

At the conclusion of plaintiffs' evidence, defendant moved for a declaration of law to the effect that on the evidence plaintiffs could not recover. This was refused.

On its part defendant read in evidence the deposition of its president (in which he testified, among other things, to the incorporation of the defendant under the laws of the State of Illinois, in 1897, as a fraternal beneficiary society; that it has continuously operated since that date until March 1, 1915, when the deposition was taken, and has been authorized and licensed each year as a fraternal beneficiary society, having a lodge system, ritualistic form of work and representative form of government, and has been operating in the State of Missouri, having had a license from this State to so operate ever since 1898, and having lodged with the superintendent of insurance of this State a certificate, as required by law, appointing that superintendent its duly authorized agent to acknowledge and receive service of process for it in this State.

The by-laws of defendant were also introduced, as well as a copy of the constitution as it existed at the date of the death of Bertie Nicholson.

The president further testified that the funds of the association were received from the members by means of assessments levied and collected monthly; that a portion of the assessments go into the benefit fund for the purpose of paying death losses; that the amount paid into the benefit fund of the society from the assessments collected from the time Bertie Nicholson joined the society until the time of her death was $47.25.

At this point, the deposition of the president having been read, as above, this appears by the abstract:

"Plaintiffs concede that this defendant is licensed as a fraternal beneficiary association in Missouri."

Defendant also offered in evidence the certificate of the superintendent of insurance of this State, of date November 11, 1898, showing his appointment by the company to act or receive service of process. The articles of incorporation and charter of the association were in evidence, as well as the certificate of the Secretary of State of Illinois of the incorporation of the defendant, and a like certificate of the superintendent of insurance of that State, dated April 15, 1897, showing defendant was a lawfully organized fraternal beneficiary society under the laws of the State of Illinois. Copies of the laws and constitution adopted from time to time were in evidence, and, while not set out in full, such parts as considered relevant are in the abstract. One of them was a provision allowing change of beneficiary. It also introduced a receipt for $47.25, dated April 2, 1914, signed by John Nicholson, this apparently being in repayment of dues, etc., paid by his wife. The statutes of the State of Illinois, under which the defendant was incorporated and organized, were in evidence, as also proofs of death furnished by plaintiffs as well as a certificate from the local council. Defendant also offered in evidence the application of Bertie Nicholson for the benefit certificate, which was read in evidence over plaintiffs' objection.

The secretary of the local council of the order, located at Vandalia, this State, testified that Mrs. Nicholson was initiated in due form on March 5, 1908; that they had a ritual; that candidates take an obligation and are initiated and that the local council elects delegates to attend the grand lodge.

This was all the evidence in the case.

At its conclusion the defendant requested the court to state in writing its conclusion of facts separate from the conclusions of law. This the court did, fiinding, among other things, that the defendant, at the time of the issuance of the benefit certificate sued on and ever since, has been a corporation organized under the laws of the State of Illinois, citing them and the amendments thereto as set out in the answer

of defendant, and that defendant "has been at all times, both prior to the issuance of the benefit certificate and ever since has been duly authorized and empowered to do business in the State of Illinois and Missouri as a fraternal beneficiary society, and has complied with the statutes of the State of Illinois and Missouri in reference to making annual reports;" that on the —— day of March, 1908. Bertie Nicholson, of Vandalia, signed an application to become a member of the defendant, which application was in evidence in the case; that the defendant corporation accepted her as a member, and that she was duly received as such member and complied with all conditions of membership and cotemporaneously therewith, on March 12, 1908, defendant issued to her the benefit certificate sued on in the case, and the court sets this out.

The court further finds that a part of the benefit certificate, there are 8 paragraphs in fine print, all under the following heading:

'This Benefit Certificate is Issued and Accepted Subject to the Following Agreements, Privileges and Conditions."

The court then sets out paragraph 5 of the certificate, as before given, in full, and finds that Howard G. Nicholson predeceased Bertie Nicholson; that she died about the——day of June, 1913, survived by her husband, John W. Nicholson; that previous to her death she made no change in the beneficiaries in the policy, *and that by the terms of the benefit certificate John W. Nicholson became the sole beneficiary thereunder and entitled to the total sum due thereunder, if not precluded from receiving said benefit by having murdered his wife, as hereinafter set forth, or if said benefit certificate was not rendered void by his acts on account of the 5th clause set forth.* It also finds that Mrs. Bertie Nicholson came to her death by the hand of her husband, John W. Nicholson, he having feloniously murdered her; that he subsequently pleaded guilty to the charge of murder and is at present incarcerated in the State Penitentiary under sentence

of life imprisonment. *"That by reason of having mur-dered his wife, said Bertie Nicholson, the said John W. Nicholson cannot recover at law the proceeds of said benefit certificate.* That that portion of clause No. 5 in fine print, but legible to read by persons of average eyesight, providing that 'If the member holding this certificate shall die by the hands of beneficiary or beneficiaries, named therein, except by accident' is invalid, unreasonable and against public policy and is consequently void, so that insofar as the legal heirs of Bertie Nicholson are concerned, the said benefit certificate is still in force and effect, and is binding on the Mutual Protective League, and it is liable for the payment to the persons legally entitled thereto, to-wit, the plaintiffs in this case, who constitute and are all the legal heirs of said Bertie Nicholson, the face of the benefit certificate with the interest as provided by law." Finding that the plaintiffs are the brothers of Bertie Nicholson and constitute all her heirs at law and come within the class of persons to whom the proceeds under the benefit certificate may be paid, the court finds plaintiffs are entitled to recover. It further finds that Bertie Nicholson paid all the assessments required and that notice of her death was given as provided and that all the requirements of the benefit certificate relating to furnishing proof of death of Bertie Nicholson to defendant have been complied with by plaintiffs. Italics, as above, ours.

The defendant requested the court to make other declarations, one to the effect that section 5 of the benefit certificate sued on, is legal, valid and binding on the insured and is reasonable. These were refused.

Defendant excepted to the finding of facts filed by the court and to the refusal of the court to find as it requested. These exceptions were overruled.

Judgment went in favor of the defendants as against the administrator and against John W. Nicholson and against the defendant, the Mutual Protective League, and in favor of plaintiffs, Homer and Barton Griffith, for $1080.50, the amount of the certificate and

interest. A motion for new trial was duly filed, as also one in arrest, both of which were overruled, and defendant Mutual Protective League excepting, has duly appealed.

## OPINION.

REYNOLDS, P. J. (after stating the facts as above).—It is contended by learned counsel for respondents that the finding of the court, that the defendant at all times prior to the issue of the benefit certificate, in 1908, and ever since, has been duly authorized and empowered to do business in this State as a fraternal beneficiary association and has complied with the statutes of this State in reference to making annual reports, is not supported by any evidence.

It is true that we do not find any direct evidence in the case as to the making of the reports, but that may be inferred from the fact of evidence it had been licensed each year to do business in the State. There is evidence that when this benefit certificate was issued, the defendant had complied with our laws and was authorized to do business in this State as a fraternal beneficiary association, and that it was such within the meaning of our laws. The president of the society, without objection, testified positively that the defendant, incorporated in Illinois in April, 1897, as a fraternal beneficiary society, had continuously operated since that date until March 1, 1915, and has been authorized and licensed each year as a fraternal beneficiary society, having a lodge system, ritualistic form of work and representative form of government, and has operated in the State of Missouri, having a license in this State to so operate as a fraternal beneficiary society since 1898, and has filed with the superintendent its authorization for him to accept service for it in this State. Furthermore, this appears at page 25 of the abstract and directly following the reading of the above deposition:

"Plaintiffs concede that this defendant is licensed as a fraternal beneficiary association in Missouri."

Reading this concession in connection with the testimony of the president of the plaintiff, it is entirely clear that at the time this certificate was issued to the member, Mrs. Nicholson, this defendant a foreign corporation, was duly authorized to do business in this State as a fraternal beneficiary association under the laws of our State. It has been decided in many cases that the authorization to a foreign corporation to do business in the State must precede the issue of a certificate of membership or the benefit certificate, if the association desires to avail itself of the benefits of our law governing fraternal beneficiary associations. As see Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675, 129 S. W. 653. When it appears, however, that that authorization precedes the issue of the certificate and has been kept up down to the date of its issue, and ever since, is authorized to act under our laws and is entitled to all the benefits and provisions relating to such association. When, as here, the court makes its finding of that fact, under the statute, that finding is binding on the appellate court, if supported by any substantial evidence. [American Brewing Co. v. City of St. Louis, 209 Mo. 600, l. c. 699, 108 S. W. 1.]

Furthermore, we find no objection or exception on the part of the respondents to this part of the finding of the learned trial court. To avail themselves of this point, they should have excepted to that part of the finding.

Furthermore, no suggestion whatever was made at the trial of the case that at the time when this certificate was issued, the defendant was not entitled to do business in our State in accordance with the provisions of what is now article 9, chapter 61, Revised Statutes 1909.

So we conclude that appellant, the Mutual Protective League, when it issued the benefit certificate here involved, was a fraternal beneficiary association

and entitled, as a foreign company, to do business in our State as such. That being so, under section 7109, which is the first section of that article, it is expressly provided that, "Such association shall be governed by this article, and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein." All the argument, therefore, of learned counsel for respondents, that this defendant is subject to the general insurance laws of this State, and its certificate to be construed as an ordinary life insurance policy, is without support.

The question really turns here upon the conclusion arrived at by the learned trial court as to whether clause 5 is against public policy and void. In point of fact, counsel for respondents, the above point out of the way, seem to concede that, and counsel for appellant claim it as the only question in the case, the latter claiming that if the learned trial court had not so found, his finding and judgment would have been for appellant, defendant below. Carefully reading the finding of facts, we think that is true.

We are unable to see why this clause 5, in so much of it as provided that if the member holding the certificate shall die "by the hands of the beneficiary or beneficiaries named therein, except by accident . . . this certificate shall be null and void and of no effect," is "invalid, unreasonable and against public policy and is consequently void," as found by the learned trial court. The public policy of a State is to be found as expressed in its Constitution and laws, and in the decisions of its highest court, and not from general considerations of the supposed public interests and policy of the State beyond what such sources of information make known to the court. [Vidal v. Girard, 2 How. (U. S.) 127; Hartford F. Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U. S. 91, l. c. 100, and cases there cited] We find no law of our state nor any decision of our Supreme Court, nor anything in

our Constitution, condemning this clause 5 as contrary to our policy. Nor do we find it unreasonable. On the contrary, it would seem to be a very wise provision and wholly in the interest of the member, to restrain beneficiaries from murdering the member, with a view of benefiting themselves.

A case somewhat similar to this was considered by the Springfield Court of Appeals, in Greer v. Supreme Tribe of Ben Hur, 195 Mo. App. 336, 190 S. W. 72. In that case it was provided that there should be a forfeiture of the benefits, if the member was killed by any of the beneficiaries. That is somewhat different from the clause here, which provides that if he is killed by a beneficiary or beneficiaries, but in our opinion that is not here a distinction of any substance. Authority is cited in the Greer Case to the effect that while forfeitures are never favored, that if, upon a reasonable construction, it appears that parties contracted for forfeiture upon certain conditions, it only remains for the courts to enforce the contract as the parties made it. It is there well said, and but the statement of a settled rule, that is is neither unlawful nor against public policy for a life insurance company to stipulate that upon certain conditions or contingencies policies shall become void. That court further says (l. c. 342): "There can be no doubt, we think, that when a policy contains a provision designed to remove a temptation of the beneficiary to prematurely end the insured's life it means the beneficiary who is, on the face of the policy, named or made such directly or indirectly." The Springfield Court then refers to the case of Grand Circle Women of Woodcraft v. Rausch, otherwise cited as Women of Woodcraft v. Rausch, 24 Colo. Ct. of App., 304, 134 Pac. 141. In the Colorado Case the provision in the membership certificate was, "If the member to whom this certificate shall be issued shall be murdered by any beneficiary named herein, or should any beneficiary named in this certificate cause the death of such member directly or indirectly, intentionally or uninten-

tionally, then any benefits which such beneficiary might otherwise have received shall revert to the Grand Circle.'' It will be found that the circumstances tended to show that the member insured had been murdered by her husband, who died of poison. In the Colorada Case it is said, reverting to the facts of the murder by the beneficiary of the member. ''The removal, by foul means, of those standing between anxious beneficiaries and property interests is quite prevalent. With the publicity of these dangers through many indictments and trials prevailing throughout the country, it is not strange that this society should seek to remove the temptation of anxious expectants to bring about premature deaths of the insured, and to press the counter suggestion that if beneficiaries in any manner whatever cause the death of insured persons the penalty shall be a loss of all claims to the benefits provided in the certificate. Feeling that we must uphold the conditions in the certificate or policy or make a new contract for the parties, and believing that it does not contravene any principle of sound public policy, the judgment should be and is hereby reversed, with an instruction to the trial court to dismiss the same with costs.''

The provision in the policy or benefit certificate in this Colorado Case is (l. c. 308): ''If the member to whom this certificate shall be issued shall be murdered by any beneficiary named herein . . . or should any beneficiary named in this certificate . . . cause the death of such member directly or indirectly, intentionally or accidentally, then any benefits which such beneficiary might otherwise have received under the provisions of this certificate shall revert to the Grand Circle.'' In that case the defendant was a fraternal benefit society created under the laws of Colorado. The plaintiffs, respondents in the appellate court, were represented by their duly qualified and acting guardian, they being minors and sole heirs of the member and of her husband, both deceased.

'These two cases, from the Springfield Court of Appeals and from the Colorado Court of Appeals, are the only cases to which we are referred, or which we have found, which bear upon the question here involved, even indirectly.

Our conclusion is that the clause in the contract which was adjudicated as void for contravention of public policy, is a valid clause and under its provisions plaintiffs cannot recover.

It is said that that clause is indefinite in saying that if the act of killing is. caused by the "beneficiary or beneficiaries" that it is not applicable here because the act of killing was by one of two beneficiaries. We do not think that argument is sound. In the first place, that is a very technical construction of the clause; in the next place, the other beneficiary, the adopted son, dying prior to his mother, when he died, under the terms of the policy or benefit certificate, lost all interest in it, and the sole beneficiary became the husband, and the whole of the benefit, and the right to the whole of the fund of $1000, fell to the husband, John W. Nicholson. When the wife died the husband would have received the whole of the benefit. But he murdered his wife, and when she died in consequence of his murderous assault, he then, after her death at his hands, but not before, forfeited all benefit. So the learned trial court found, finding that "by the terms of said benefit certificate said John. W. Nicholson became the sole beneficiary thereunder and entitled to the total sum due thereunder, if not precluded from receiving said benefit by having murdered his wife, as hereinafter set forth, or if said benefit certificate was not rendered void by his acts on account of the (5th) clause. . . . That by reason of having murdered his wife, . . . John W. Nicholson cannot recover at law the proceeds of said benefit certificate." We know of no provision of law, outside of the certificate, that would prevent even a murderer, being the beneficiary, from recovering. He was the sole beneficiary. In no event could the benefit, or any part of

it be paid to him, the murderer of his wife, and that failing, we find no provision whatever which threw the benefit back to these plaintiffs as heirs of Mrs. Nicholson.

Learned counsel for respondents argue, in support of the conclusion of the learned trial judge, that he probably based it on the theory that if the clause be given the construction desired by the company "that, at any time, the company by connivance with only one of the beneficiaries could forfeit the insurance;" and they argue "that such a possibility would be a greater incentive to the company than to the insured." The sum of this is, that to avoid payment, the company planned murder. This argument answers itself.

The result is that the judgment of the circuit court must be reversed. *Allen* and *Becker. JJ.,* concur.